| | | |
|---|---|---|
| *VIRGINIA BLACKMORE, o/b/o JS,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-385-P-S* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably determined that the claimant, a minor child whom her mother, the plaintiff, alleges is disabled by attention deficit hyperactivity disorder ("ADHD"), a learning disability, and a nutritional deficit, was not disabled. For the reasons that follow, I recommend that the commissioner's decision be affirmed.

The sequential evaluation process generally followed by the commissioner in making disability determinations, *see* 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), is somewhat modified when the claimant is a child, 20 C.F.R. § 416.924, as is the case here. In accordance with that section, the administrative law judge found, in relevant part, that the child, who was born on February 5, 1999, suffered from a severe impairment, ADHD, Findings 1, 3, Record at 10; that she did not have an impairment or

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

combination of impairments that met or medically equaled the criteria of any impairment included in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Finding 4, *id*.; that she did not have an impairment or combination of impairments that functionally equaled the criteria of any impairment included in the Listings, Finding 5, *id*.; and that she, therefore, had not been disabled, as that term is defined in the Social Security Act, since October 24, 2006, the date that her application was filed, Finding 6, *id*. at 17. The Decision Review Board ("DRB") selected the decision for review but did not complete its review within the allotted time, see *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.420.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

When a claim for benefits is made on behalf of a child, the commissioner must first determine whether the alleged impairment is severe. 20 C.F.R. § 416.924(a), (c). If the impairment is found to be severe, as was the case here, the question becomes whether the impairment is one that is listed in, or medically or functionally equals, the Listings. 20 C.F.R. § 416.924(a). If the impairment, or combination of impairments, does not meet or equal this standard, the child is not disabled. 20 C.F.R. § 416.924(d)(2).

An impairment or combination of impairments is medically equal in severity to a listed impairment when the medical findings are at least equal in severity and duration to the listed findings; medical equivalence must be based on medical findings. 20 C.F.R. § 416.926(a) & (b).

An impairment or combination of impairments is functionally equivalent to a listed impairment when it results in marked limitations in two domains of functioning or an extreme limitation in one domain, based on all of the evidence in the record. 20 C.F.R. § 416.926a(a) & (b).

A "marked" limitation occurs when an impairment or combination of impairments interferes seriously with the claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation exists when an impairment or combination of impairments interferes very seriously with the claimant's ability independently to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). No single piece of information taken in isolation can establish whether a particular limitation is marked or extreme. 20 C.F.R. § 416.926a(e)(4).

In this case, the administrative law judge found that the plaintiff's child had less than marked limitations in the domains of (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, and (iv) ability to care for herself. *See* Record at 12-16. He found that she had no limitation in the remaining two domains, (i) moving about and manipulating objects and (ii) health and physical well-being. *See id.* at 15-16.

The decision now challenged by the plaintiff was rendered following a July 23, 2008, order by the DRB vacating an April 25, 2008, decision by the same administrative law judge and remanding the case to him for further proceedings. *See id*. at 95-96. The DRB stated that it remanded the case to the administrative law judge for resolution of the following issues:

- The hearing decision places significant weight on the April 24, 2007, teacher statement of Ms. Roy. However, more recent evidence of problems at school was not addressed. In particular, the claimant's mother testified that the claimant's school has been contacting her every day, the claimant is not doing well at school and is having trouble with her new teacher (Ms. Braley) even when medicated. Further, the claimant's treatment notes dated October 25, 2007, which reflect a worsening of the claimant's impairment, suggest contact with Ms. Braley is necessary. In

addition, the claimant's scores on standardized testing dated November 28, 2007, indicate serious deficiencies. Further evaluation is necessary.

- Further, the decision concludes that the claimant's [ADHD] responds fairly well to medication. However, the more recent evidence does not support that conclusion. Treatment notes dated October 25, 2007, describe the claimant as very hyperactive and discussed a change to her medications (Exhibit 9F). At the hearing, the claimant's mother indicated the claimant was changing doctors and was not on medication. Further development is necessary to determine the efficacy of the claimant's current medication regimen.

*Id*. at 95 (citations omitted).

The DRB further directed the administrative law judge, on remand, to:

- Obtain additional evidence from treating sources concerning the claimant's ADHD and the efficacy of the medication regimen in order to complete the administrative record in accordance with regulatory standards. The Administrative Law Judge will also obtain updated school records to include a teacher questionnaire completed by Ms. Braley, if possible, and/or any other teacher with knowledge of the claimant's school performance. The decision should also consider and address the claimant's standardized test results dated November 28, 2007.

- Further, if necessary, obtain evidence from a medical expert to clarify whether the claimant's impairment meets, equals or functionally equals the severity of an impairment listed in [the Listings]. In particular, the medical expert should be asked to address the apparent conflict between the benign evaluation from the claimant's teacher and the opinion of the treating source.

*Id*. at 96. The DRB directed the administrative law judge to offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. *See id*.

Post-remand, the administrative law judge obtained, or was supplied, (i) school records from the Jameson School for the period from November 1, 2006, to June 15, 2008 (Exhibit 14E), which included records of Ms. Braley, *see id*. at 231-39, (ii) treatment notes from a new treating physician, Tim Hawkins, M.D., of Greater Portland Pediatric Associates, for the period from

June 11, 2008, to December 10, 2008 (Exhibit 10F), *see id*. at 377-83,[2] and an opinion dated

January 7, 2009, from Dr. Hawkins that the child's ADHD condition met Listing 112.11 (Exhibit

11F), *see id*. at 384-90.

The administrative law judge also held a new hearing in the case on February 17, 2009,

during which the plaintiff and an expert, James M. Claiborn, Ph.D., testified. *See id*. at 18-19.

During the hearing, the claimant's counsel requested that the record be left open to permit

submission of additional written evidence. *See id*. at 7. The request was granted, and she

submitted one additional exhibit consisting of school records from Biddeford Primary School for

the period from March 2, 2007, to September 25, 2008 (Exhibit 15E), *see id*. at 7, 240-49.

Among those records was a copy of the child's 2008 scores on standardized testing administered

by the Northwest Educational Association ("NWEA"). *See id*. at 243.

## I. Discussion

The plaintiff contends that, in his post-remand decision, the administrative law judge

erred in failing to (i) consider her child's assertedly severe learning disability and nutritional

deficit impairments, (ii) carry out several of the DRB's remand instructions, and (iii) find that

her child's condition met or medically or functionally equaled a Listing. *See* Plaintiff's Itemized

Statement of Error ("Statement of Errors") (Docket No. 9) at 2-10. I find no reversible error and,

accordingly, recommend that the court affirm the decision.[3]

---

[2] The administrative law judge accepted the claimant's counsel's representation that the records in question were those of Dr. Hawkins, although the doctor's signature is illegible and his full name is nowhere spelled out. *See* Record at 21, 377-83. I do likewise.

[3] At oral argument, the plaintiff's counsel stated that he wished to "back off a little" on the issue of whether the child had a medically determinable learning disability, stating that he was not sure that it was a key issue and that the child should have been found disabled on the basis of her ADHD alone. Because he did not state that he was expressly withdrawing the learning disability issue, I have considered it.

## A. Asserted Learning Disability, Nutritional Deficit Impairments

The plaintiff complains that the administrative law judge overlooked or otherwise incorrectly evaluated two severe medically determinable impairments suffered by her child, a learning disability and a nutritional impairment. *See id*. at 3-5. I find no error.

In the absence of a medically determinable impairment, a claimant's symptoms rightfully are ignored: "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009) ("SSR 96-7p"), at 133.

The plaintiff argues that the record reflects that her child suffered from a medically determinable learning disability as evidenced both by a specific diagnosis and by repeated substandard scores on objective academic assessment tests in 2007 and 2008. *See* Statement of Errors at 3. She points to a notation at the top of a Social Security form completed by Disability Determination Services ("DDS") nonexamining consultant Scott W. Hoch, Ph.D., as constituting a "diagnosis" of learning disability. *See id*. (citing Record at 345). Yet, Dr. Hoch, in his explanatory notes, stated that the plaintiff had *alleged* that her child had "ADHD & LD [learning disability]." *Id*. at 350. He made no notation of any actual diagnosis of a learning disability, *see id*., and I find none of record. The fact that the child performed poorly on standardized testing in 2007 and 2008, *see id*. at 230, 243, does not necessarily mean that she suffered from a learning disability: those results could be attributable, for example, to her diagnosed ADHD and/or to test

6

inexperience or anxiety. Such a conclusion would require expert assessment, and the plaintiff offers none.

The plaintiff further asserts that the administrative law judge impermissibly relied either on the testimony of Dr. Claiborn, who is a psychologist and not a medical expert, or on his own interpretation as a layperson of the raw medical evidence, to arrive at the conclusion that there was no medically determinable nutrition impairment. *See* Statement of Errors at 4-5. While, as the plaintiff notes, treating physicians expressed concern about her child's low weight and weight loss, *see, e.g*., Record at 306, 308, 312, 331, 351-53, 355, the record is devoid of any mention of a weight-related diagnosis or any indication whatsoever that the child's weight impacted her functioning or otherwise constituted an "impairment." An administrative law judge is permitted to draw a common-sense conclusion without aid of a medical expert. *See, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990); *Stanwood v. Bowen*, 643 F. Supp. 990, 991 (D. Me. 1986). The administrative law judge permissibly did so here.

## B. DRB's Remand Instructions

The plaintiff next argues that the administrative law judge failed to carry out the DRB's remand instructions in that:

1.      He did not adequately address the 2007 standardized test scores and completely ignored those for 2008. *See* Statement of Errors at 5; *see also id*. at 3-4.

2.      He did not recontact the child's treating sources regarding the efficacy of her ADHD medication regimen, compounding that error by speculating that the child's problems were a function of her failure to take medication rather than the efficacy of that medication and

crediting testimony of Dr. Claiborn, a psychologist rather than a medical professional and therefore not competent to give expert testimony as to the efficacy of medication. *See id*. at 5-6.

She adds that even if the DRB had not required the administrative law judge to recontact the child's treating sources, he was obliged to do so pursuant to Social Security Ruling 96-5p ("SSR 96-5p"). *See id*. at 5.

An administrative law judge is required to take any action ordered by the Appeals Council (or, in this case, the parallel body, the DRB). *See* 20 C.F.R. § 416.1477(b). I find that, with respect to the points raised by the plaintiff, he did so.

As concerns test scores, the DRB directed the administrative law judge to "consider and address the claimant's standardized test results dated November 28, 2007." Record at 96. He did so, providing several reasons why, despite the DRB's concern that the 2007 scores indicated serious deficiencies, he found that not to be the case. *See id*. at 12-13. To the extent that the administrative law judge erred in failing to address the 2008 scores, which were submitted post-remand and thus not the subject of the DRB's express order, any error was harmless. Those scores reflected significant improvement, with the child rising from the third to the 13th percentile in mathematics, the 11th to the 25th percentile in reading, and the first to the 16th percentile in language usage. *Compare id*. at 230 *with id*. at 243. In addition, whereas on the 2007 NWEA test the child was rated "low," the lowest rating, in 14 of 16 subcategories, "low average" in one, and "average" in another, on the 2008 NWEA test she was rated "low" in 11 of 16 subcategories, "low average" in two, "average" in two, and "high average" in one. *See id*.

To the extent that the plaintiff challenges the bases of the administrative law judge's conclusion that the 2007 NWEA test scores were not indicative of serious deficiencies, *see* Statement of Errors at 3-4, she challenges the substantiality of the evidence supporting that

8

finding, not his compliance with the DRB order. However, on that front as well, she fails to make a persuasive case that reversal and remand are warranted. She faults the administrative law judge for concluding "without evidentiary support" that there was no persuasive evidence that the 2007 test scores were probative of chronic marked limitations in acquiring and using information, for failing to address the significance of the 2007 test scores with Dr. Claiborn or seek his opinion regarding the later-submitted 2008 scores, for offering a conclusory opinion regarding the 2007 scores, and for basing his opinion regarding the scores on the raw medical evidence. *See id.*

These complaints notwithstanding, the administrative law judge's finding regarding the 2007 test scores is supported by substantial evidence. While Dr. Claiborn did not specifically discuss those test scores, he reviewed the child's then-available school and medical records, *see* Record at 38, which included those scores, and concluded that she had a less than marked impairment in acquiring and using information, *see id*. at 40. The administrative law judge properly relied on that opinion. *See id*. at 10. To the extent that the administrative law judge erred in not eliciting Dr. Claiborn's opinion regarding the 2008 test scores, the error is harmless. As noted above, while the 2008 scores were still low, they were significantly better than the 2007 scores. There is no reason to think that taking them into account would have changed Dr. Claiborn's opinion. Further, the administrative law judge gave independent reasons, grounded in the record, why he did not view the 2007 test scores as indicative of serious deficiencies, including that:

1.      Linda Roy, the child's first-grade teacher, indicated in April 2007 that the child had some "obvious" problems in the domain of acquiring and using information, but a "serious" problem only in her ability to express ideas in written form. *See* Record at 12, 199.

9

2.	School records from October 2007 and October 2008 indicated that the child no longer needed special education services.  *See* Record at 13, 223, 240.

3.	School records from the child's second-grade teacher, Ms. Braley, indicated that the child had made a "great start" in second grade, and the child's report card for second grade reflected fewer areas of concern than her first-grade report card.  *See* Record at 13, 234; *compare id*. at 231-32 *with id*. at 235-36.

The assertion that, in contravention of the DRB's instructions, the administrative law judge failed to recontact the child's treating sources regarding the efficacy of her medications, *see* Statement of Errors at 5-6, likewise is without merit.  The DRB instructed the administrative law judge to "[o]btain additional evidence from treating sources concerning the claimant's ADHD and the efficacy of the medication regimen[.]"  Record at 96.  The administrative law judge did obtain additional evidence relevant to that question from a treating source, Dr. Hawkins.  *See id*. at 377-83.

Nor did SSR 96-5p oblige the administrative law judge to recontact treating sources.  That ruling applies when (i) "the evidence does not support a treating source's opinion" on an issue reserved to the commissioner and (ii) "the adjudicator cannot ascertain the basis of the opinion from the case record[.]"  SSR 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 127; *see also* 20 C.F.R. § 416.912(e).  The child's treating sources had not expressed an opinion as to the efficacy of her medications.

As is the case with the test-scores issue, to the extent that the plaintiff challenges the bases of the administrative law judge's conclusion that the child's medications were effective, and that her performance at certain points likely would have been significantly better had she been taking medication consistently, *see* Statement of Errors at 5-6, she challenges the

substantiality of the evidence supporting those findings, not his compliance with the DRB order. As the plaintiff herself acknowledges, *see id*. at 6, the administrative law judge's conclusions were buttressed by the hearing testimony of Dr. Claiborn, *see* Record at 41-43. She argues that Dr. Claiborn, as a psychologist, was not competent to give testimony regarding the efficacy of medication. *See* Statement of Errors at 6. She cites no authority for that proposition, and I do not find it self-evident. While Dr. Claiborn could not *prescribe* medication, I discern no reason why, as a psychologist, he was unqualified to assess whether the child's ADHD symptoms were of greater or lesser severity during times that the record indicated she was taking or not taking prescribed medication.

In any event, as counsel for the commissioner noted at oral argument, substantial record evidence in addition to Dr. Claiborn's opinion supports a finding that the child's performance improved while on medication, including the plaintiff's testimony that there was a gap in the child's taking of prescribed ADHD medication from about February 2007 to the summer of 2008, *see* Record at 26-27, a notation in a Vanderbilt assessment by Ms. Braley dated June 17, 2008, that the evaluation, which reflects some serious difficulties, was based on a time when the child was not on medication, *see id*. at 380-81, and the comments of Ms. Roy in an evaluation dated April 24, 2007, that the child's learning varied and depended, "to a large degree, on whether or not she has taken her ADHD meds" and that, if she had not, she could not "attend to lessons or directions, organize thoughts +/or materials or remember[,]" *id*. at 199.[4]

---

[4] At oral argument, the plaintiff's counsel suggested for the first time that the child should have been considered for a closed period of disability, arguing that her 2007 standardized test scores on their face reflected marked impairment and that any subsequent improvement was due to good teaching rather than ADHD medication. I deem this argument waived. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, as counsel for the commissioner rejoined at oral argument, to the extent that the child's period of lower

*(continued on next page)*

## C. Listings Analysis

The plaintiff finally faults the administrative law judge for rejecting the opinions of Dr.
Hawkins and another treating physician, Jesse Bain, D.O., that her child met Listing 112.11 and
adopting the opinion of Dr. Claiborn that her child did not meet or medically or functionally
equal any listing. *See* Statement of Errors at 6-10.

### 1.     Treatment of Treating Physicians

The determination of whether a claimant meets one of the Listings is an issue reserved to
the commissioner, with respect to which an opinion of a treating source is never entitled to
controlling weight. *See* 20 C.F.R. § 416.927(e)(2)-(3). On the other hand, while an
administrative law judge is free to decline to adopt such an opinion, he or she must supply "good
reasons" for doing so. *See id.* § 416.927(d)(2) (commissioner must "always give good reasons in
[his or her] notice of determination or decision for the weight [he or she] give[s] your treating
source's opinion"); *see also, e.g.*, SSR 96-5p at 127 (even as to issues reserved to the
commissioner, "the notice of the determination or decision must explain the consideration given
to the treating source's opinion(s)").

Drs. Bain and Hawkins filled out forms indicating that the child met Listing 112.11,
which pertains to ADHD and requires, with respect to a child the claimant's age:

1.     Medically documented findings of marked inattention, marked impulsiveness, *and*
marked hyperactivity; *and*

---

performance is attributable to failure to take prescribed medication, she could not be found eligible for a closed
period of disability benefits. *See, e.g., L.B.M. ex rel. Motley v. Astrue*, Cause No. 1:08-cv-1354-WTL-DML, 2010
WL 1190326, at *21 (S.D. Ind. Mar. 23, 2010) ("SSA regulations require child claimants to follow prescribed
treatments in order to obtain benefits, if those treatments can reduce their functional limitations so that they are no
longer disabled. If, without a good reason, effective prescribed treatments are not followed, then benefits will be
stopped.") (citing 20 C.F.R. § 416.930). As noted above, the administrative law judge supportably found that the
child's performance improved when she took prescribed medication.

2.      Resulting in at least two of the following: (i) marked impairment in age-appropriate cognitive/communicative function, (ii) marked impairment in age-appropriate social functioning, (iii) marked impairment in age-appropriate personal functioning, or (iv) marked difficulties in maintaining concentration, persistence, or pace.

Listing 112.11 (incorporating by reference Listing 112.02(B)(2)); *see also* Record at 369-70 (Bain opinion), 384-90 (Hawkins opinion). The regulations define "marked" as follows:

> Where "marked" is used as a standard for measuring the degree of limitation it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis. When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction.

Listing 112.00(C).

The administrative law judge rejected the Bain and Hawkins opinions, reasoning that:

1.      The evidence as a whole did not show that the child's ADHD had, for a continuous period of 12 months, resulted in marked impairment in age-appropriate cognitive/communicative functioning, social functioning, or personal functioning, or in marked difficulties maintaining concentration, persistence, or pace. *See* Record at 10.

2.      Medication and school records, as well as statements from the child's mother, indicated that the child's functioning improved significantly when she took appropriate medication. *See id.*

3.      Dr. Claiborn testified that, in his opinion, the documentary evidence did not show that the child's ADHD met or equaled the criteria of a listed impairment. *See id.*

These are good and sufficient reasons for declining to adopt the Listings opinions of Drs. Bain and Hawkins and, insofar as my review of the record discloses, those reasons have adequate

record support.  The plaintiff nonetheless challenges the rejection of the Bain and Hawkins opinions on several grounds.  *See* Statement of Errors at 6-10.  For the reasons that follow, I conclude that none has merit:

1.  *That neither the administrative law judge nor Dr. Claiborn was competent to assess the efficacy of the child's ADHD medication, see id. at 7-8*:  As noted above, the administrative law judge properly relied on the opinion of Dr. Claiborn, whom the plaintiff has failed to show was unqualified to assess the efficacy of medication in controlling the child's ADHD symptoms.

2.  *That the administrative law judge failed to follow the DRB's instruction to obtain additional medical evidence from treating sources concerning the efficacy of medication, see id.*:  As noted above, the administrative law judge obtained additional evidence bearing on this issue from a treating source, Dr. Hawkins.

3.  *That the administrative law judge wrongly suggested that the plaintiff's testimony supported his conclusion, when the opposite was true, see id. at 8*:  The administrative law judge referred not to the plaintiff's testimony at the post-remand hearing, which he found not fully credible, *see* Record at 11, but rather to statements that she had made to treating providers, *see id*. at 10.  The cited records do indicate that the plaintiff made statements to providers suggesting that the medication had some efficacy in controlling the child's symptoms.  *See id*. at 313 (progress note of Dr. Bain dated March 8, 2007, indicating that plaintiff had reported that child was doing well, school was going well, and there were no concerns at home), 316 (progress note of Dr. Bain dated November 16, 2006, indicating that plaintiff had reported that she had seen a change for the positive at home on the medicine Concerta, but teachers had called to say the

14

child was still having difficulty at school), 377 (progress note of Dr. Hawkins dated November 5, 2008, indicating that the child was doing well).

4.     *That the administrative law judge failed to apply the "whole child" approach, as required by Social Security Ruling 09-1p ("SSR 09-1p"), in two respects:*

A.     *By assertedly failing to adequately analyze the child's standardized test scores, which reasonably could have been expected to reflect impairment not only in the domain of acquiring and using information but also in the domains of attending to and completing tasks and interacting with others. See Statement of Errors at 8-9.*

B.     *By assertedly failing to adequately account for the child's difficulties at home, which were considered only in the context of the domain of caring for oneself, although they reflected difficulty in other domains, including attending to and completing tasks and interacting with others. See id. at 10.*

SSR 09-1p requires adjudicators, *inter alia*, to consider how a child functions across all settings and to take into account whether difficulties in any one setting (for example, home or school) reflect impairment in each of the six functional domains. *See* SSR 09-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 350-51. Yet, the rule is clear that the commissioner does not "require . . . adjudicators to discuss all of the considerations in the sections below [which discuss, *inter alia*, determining which domains are involved in doing activities and rating the severity of limitations in the domains] in their determinations and decisions," but rather "only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." *Id*. at 352.

I find no error. Although the administrative law judge did not discuss whether the child's standardized test scores for 2007 and 2008, or her functioning at home, reflected impairment in

the domains of attending to and completing tasks or interacting with others, *see* Record at 13-15,

he provided sufficient detail to comprehend how he made his findings. He made clear that:

1.  He did not fully credit the plaintiff's testimony at the post-remand hearing

regarding the extent to which the child was impaired, including at home. *See id*. at 11.

2.  He relied on substantial evidence of record that the child had a less than marked

impairment in the domain of attending to and completing tasks, including (i) the opinion of Dr.

Claiborn, *see id*. at 10, 40,[5] (ii) the report of the child's first grade teacher, Ms. Roy, in April

2007 that the child needed only slightly more refocusing to task than an average unimpaired

student, *see id*. at 14, 200, (iii) the reports of the child's second-grade teacher, Ms. Braley, in

November 2007 and March and June 2008 that the child put forth good effort during tasks, *see

id*. at 14, 234, (iv) the fact that a Vanderbilt assessment completed by Ms. Braley in June 2008,

which Dr. Hawkins cited as forming part of his opinion that the child's ADHD was disabling,

reflected the child's performance while not taking medication, *see id*. at 14, 27 (plaintiff's

testimony that child was off of medication for almost a year before she began seeing Dr.

Hawkins in June 2008), 380-81, 389, and (v) the fact that Dr. Hawkins indicated in a note dated

November 2008 that the child was "doing well" on Concerta, which suggested that her

performance in this domain would have been significantly better had she been taking medication

consistently, *see id*. at 14, 377.

3.  He relied on substantial evidence of record that the child had a less than marked

impairment in the domain of interacting with others, including (i) the opinion of Dr. Claiborn,

*see id*. at 10, 41, (ii) Ms. Roy's description of the child as very popular with classmates, *see id*. at

---

[5] As noted above, while Dr. Claiborn did not specifically discuss the 2007 standardized test scores, he had the benefit of review of them in forming his opinion. Although he did not see the 2008 standardized test scores, there is no reason to believe that he would have changed his opinion, given that those scores reflected a significant improvement over the 2007 scores.

14, 201, and (iii) Ms. Braley's indication that it was a pleasure to have the child in class, *see id*. at 15, 234.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of June, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge